# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

THOMAS LESLIE CARR,

        Movant,

vs.                            Case No.:   3:20-cv-160-BJD-JBT
                                                    3:16-cr-118-BJD-JBT

UNITED STATES OF AMERICA,

        Respondent.

_____/

## **ORDER**

Thomas Leslie Carr, a pro se federal inmate, moves under 28 U.S.C. § 2255 to vacate his conviction and sentence for two counts of producing child pornography. (Civ. Doc. 1, § 2255 Motion.)[1] He alleges that trial counsel gave ineffective assistance and that the statute of conviction is unconstitutional, both facially and as applied to him. The United States responded in opposition. (Civ. Doc. 6, Response.) Carr did not file a reply, despite being given permission and an extension of time to do so. Thus, the case is ripe for a decision.

Under 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and

---

[1]      "Civ. Doc. __" refers to entries on the civil § 2255 docket, No. 3:20-cv-160-BJD-JBT. "Crim. Doc. __" refers to entries on the criminal docket, No. 3:16-cr-118-BJD-JBT.

[2]      Rule 8(a) of the Rules Governing Section 2255 Proceedings requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before resolving a § 2255 motion.

determines that a hearing is unnecessary to resolve the merits. No evidentiary hearing is required because Carr's allegations are affirmatively contradicted by the record, patently frivolous, or even assuming the facts he alleges are true, he still would not be entitled to relief. <u>Rosin v. United States</u>, 786 F.3d 873, 877 (11th Cir. 2015); <u>see also</u> <u>Patel v. United States</u>, 252 F. App'x 970, 975 (11th Cir. 2007).[3] Thus, Carr's § 2255 Motion will be denied.

## I.   Background

In October 2012, Homeland Security Investigations (HSI) and Florida law enforcement agencies began to investigate a trafficking and prostitution ring led by a man named Michael Gallon. (Crim. Doc. 76, Presentence Investigation Report [PSR] ¶ 6.)[4] Investigators discovered that Gallon had recruited several females, including minors, to work for him as "dancers." <u>Id.</u> Gallon took women and girls to locations throughout Florida and Georgia, where he would prostitute the females at "house parties" and private events. <u>Id.</u>; (see also Crim. Doc. 101, Trial Transcript Vol. I at 29–31.) There, male attendees would pay a fee to Gallon and a separate fee to the females to engage in sexual activity. PSR ¶ 6. Investigators learned that Gallon used various tactics to recruit women and

---

[3]     The Court does not rely on unpublished opinions as binding precedent, but they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022); <u>see</u> 11th Cir. R. 36–2.

[4]     With one exception, Carr did not object to the facts in the PSR. (Crim. Doc. 104, Sentencing Transcript at 5). Carr insisted that he <u>did</u> ask about the victims' ages, <u>compare</u> Sentencing Tr. at 39 <u>with</u> PSR ¶ 13, but that dispute is not material to this Order.

girls, including recruiting girls from low-income areas and promising them large sums of money. Trial Tr. Vol. I at 30. Sometimes Gallon would profess his love for the girls, but other times Gallon resorted to outright violence, including rape, to control the victims. See id.

During the investigation, HSI agents discovered that Carr, who lived in Jacksonville, Florida, was one of Gallon's recurring clients. PSR ¶ 7; Trial Tr. Vol. I at 42. As was Gallon's custom, he offered Carr access to the females in his employ in exchange for a fee. PSR ¶ 7. Carr would hire females from Gallon for sex and to create sexually explicit photographs and videos. Id. HSI also identified two minors—M.D. and S.P.—who were involved in dealings between Gallon and Carr. Id. Law enforcement officers, including HSI Special Agent Justin Deutsch, interviewed M.D. and S.P. in person and confirmed their identities and dates of birth through birth certificates and Department of Motor Vehicle (DMV) records. See Trial Tr. Vol. I at 32–42; see also Gov't Exs. 1–4A. The minors provided information that, along with other sources, helped law enforcement identify Carr as a suspect. Trial Tr. Vol. I at 42.

On November 14, 2013, agents from HSI and other law enforcement organizations executed a federal search warrant at Carr's residence. PSR ¶ 8. During the search, agents found two Canon Rebel cameras, four JVC video recorders, an Acer laptop computer, nearly 300 SD cards, hundreds of printed photographs of females, and other electronic storage devices. Id. Agents found

a nude photograph of S.P. on top of a stack of photographs. Trial Tr. Vol. I at 56–57; Gov't Ex. 13.

Carr consented to an interview with the agents while they were at his residence. PSR ¶ 9. The agents asked Carr if he knew why they were there, and Carr responded that he thought it was about "Mike," the man who "brings the girls." Id.; see also Trial Tr. Vol. I at 47. Carr identified Michael Gallon from a photo array of six individuals. PSR ¶ 9.

During the interview, Carr said he met Gallon at a Jacksonville strip club in 2010. Id. ¶ 10. Gallon would show up at the strip club with eight or nine girls, some of whom would prostitute in the back rooms at the club. Id. Carr said Gallon was not from Jacksonville and that he traveled across the state with the females. Id. Carr developed a relationship with Gallon, in which Gallon would call or text message Carr when he was in town with females, and Carr would pay Gallon a fee to take a female back to his residence for "photograph sessions." Id.; Trial Tr. Vol. I at 49–52. Over the three years he had known Gallon, Carr hired about fifteen girls from him. PSR ¶ 11. Carr would typically meet Gallon at a strip club or some other business (like a hotel or motel), review the girls who accompanied Gallon, and after choosing the female he found most attractive, Carr would pay Gallon a $20–$30 fee to take the female back to his residence. Id. Once at his residence, Carr would pay the female $100 for a photo session, which would generally involve the female wearing an outfit and

4

stripping nude. Id.; Trial Tr. Vol. I at 49–51. Carr said he usually tried to get the female to masturbate on video and, once she was doing so, he would attempt to have sexual intercourse with them. PSR ¶ 11; Trial Tr. Vol. I at 51. If a female was reluctant to have sex, Carr said he would offer them more money to convince them to do so. PSR ¶ 11; Trial Tr. Vol. I at 51. Carr estimated that he had sex with about half the girls he photographed and that he knew Gallon was a "pimp." PSR ¶ 11; Trial Tr. Vol. I at 51, 72.

The agents asked Carr which devices he used to photograph the girls, and Carr responded that he used a digital Canon Rebel camera and a digital video camera. PSR ¶ 12. Carr said he stored the photographs on SD memory cards or uploaded them to his computer, and that he also printed some photographs. Id. Carr said he assumed that the girls he hired were at least 18 years old because Gallon usually brought them to a strip club, where only adults were allowed. Id. ¶ 13. When shown photos of M.D. and S.P., Carr recognized them as females he had hired from Gallon. Id. ¶¶ 13–14. However, Carr denied knowing that the girls were underage. Id. ¶ 13.

A forensic analysis of Carr's devices revealed eighteen still images of M.D., all taken on October 27, 2012, when she would have been fifteen years old. PSR ¶¶ 16, 17; Trial Tr. Vol. I at 123, 129–30, 157–58; Gov't Exs. 42–44, 46–57. M.D. was nude in several of these images, with a focus on her genitalia. PSR ¶ 17; Trial Tr. Vol. I at 148–49. A forensic analysis also revealed thirteen

still images of S.P., all taken on April 12, 2013, when she would have been seventeen years old. PSR ¶ 18; Trial Tr. Vol. I at 123, 130, 157; Gov't Exs. 58–64. S.P. was nude in several of these images as well, with a focus on her genitalia. PSR ¶ 18. In addition, an SD card recovered from Carr's residence contained two videos of S.P. masturbating or having intercourse with Carr. PSR ¶ 19. That video was also produced on April 12, 2013. Id.

In 2016, a federal grand jury returned a two-count indictment against Carr. (Crim. Doc. 3, Indictment.) Count One charged him with the production of child pornography for his activities with M.D., in violation of 18 U.S.C. § 2251(a).[5] Count Two charged Carr with the production of child pornography for his activities with S.P., in violation of the same statute. Carr was arrested two days later. He pleaded not guilty to the charges, assisted by court-appointed counsel Mark Ciaravella. Following a detention hearing, a United States Magistrate Judge ordered Carr to be detained pending trial. (Crim. Doc. 19, Detention Order; Crim. Doc. 19-1, Detention Findings.)

The government moved to preclude Carr from presenting a mistake-of-age defense. (Crim. Doc. 39, Motion in Limine.) The government argued that under United States v. X-Citement Video, Inc., 513 U.S. 64, 77 n.5 (1994), and

---

[5]   18 U.S.C. § 2251(a) makes it unlawful to "employ[ ], use[ ], persuade[ ], induce[ ], entice[ ], or coerce[ ] any minor to engage in … any sexually explicit conduct for the purpose of producing any visual depiction of such conduct … if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer."

6

United States v. Deverso, 518 F.3d 1250, 1258 (11th Cir. 2008), knowledge of the victim's age is not an element of the crime of producing child pornography, nor is mistake-of-age an available defense. Carr's attorney acknowledged that under circuit precedent "a defendant's knowledge of the victim's age is not an element the government is required to prove in a prosecution under § 2251(a)." (Crim. Doc. 55, Response to Mtn. in Limine at 1.) But, he argued, it would violate Carr's rights under the First, Fifth, and Sixth Amendments to the United States Constitution to prevent him from asserting a mistake-of-age defense. Id. He argued that the Eleventh Circuit had misconstrued X-Citement Video and that the ability to raise a mistake-of-age defense "is necessary to save § 2251 from constitutional invalidation." Id. at 2; see also id. at 3–10. Following Eleventh Circuit precedent, the Court granted the Motion in Limine and ordered that Carr could not present a mistake-of-age defense. (Crim. Doc. 60, Minute Entry.)

The case went to a jury trial on May 31 and June 1, 2017. The jury heard testimony from four HSI special agents about their investigation and received evidence seized from Carr's residence. The jury also heard testimony from Jay Wingate, a character witness who testified on Carr's behalf. Carr's attorney subpoenaed M.D. and S.P. to testify, but neither appeared. (See Crim. Doc. 102, Trial Transcript Vol. II at 48.) In closing argument, the government asserted that the evidence proved beyond a reasonable doubt that Carr employed, used,

or persuaded M.D. and S.P. to engage in sexually explicit activity to create images of such conduct, that M.D. and S.P. were minors when that occurred, and that Carr had produced the images using materials that were transported in interstate or foreign commerce. Id. at 66–76. Carr argued that the government had not proved the ages and identities of the females beyond a reasonable doubt, nor had the government proved that Carr coerced them to engage in sexually explicit conduct, since the females were willing participants and Carr did not use threats or force. Id. at 76–88. The jury deliberated for less than two hours before returning a guilty verdict on both counts. See id. at 110–12; (Crim. Doc. 71, Jury Verdict).

At sentencing, Carr gave a statement and testimony, in which he expressed remorse and insisted he never would have hired M.D. and S.P.—who purportedly misrepresented their ages—had he known they were minors. Sentencing Tr. at 22–39. Carr's parents, two friends, and brother-in-law each gave a statement attesting that Carr was a generous and dutiful friend and family member. Id. at 10–21. While acknowledging that mistake-of-age is not a defense to the charges, Carr's attorney argued that his genuine mistake about the victims' ages was a relevant consideration for sentencing, id. at 43–44, with which the Court agreed, see id. at 61. Carr's attorney also pointed out that Carr had not used threats, force, or violence with the girls and argued that the guidelines range was inflated. See id. at 44–52, 66–68. The Court determined

that Carr should be given a two-level reduction for acceptance of responsibility because he cooperated with the investigation and never denied his encounters with M.D. and S.P., resulting in a guidelines range of 262 to 327 months' imprisonment. Id. at 69–70. The Court ultimately sentenced Carr to the mandatory minimum: 15 years (180 months) in prison for both counts, running concurrently. (Crim. Doc. 88, Judgment.) The Court explained that while Carr's conduct was serious, the mandatory minimum imposed a greater sentence than was necessary under the circumstances. Sentencing Tr. at 69–76.

Carr appealed his conviction and sentence, arguing "that the statute is unconstitutional because it does not include knowledge of the victim's age as an element of the offense and does not permit him to present ignorance of the victim's age as a defense." (Crim. Doc. 108, USCA Opinion at ECF p. 2.) The Eleventh Circuit summarily rejected Carr's arguments, finding them foreclosed by United States v. Ruggiero, 791 F.3d 1281, 1284–91 (11th Cir. 2015). USCA Opinion at ECF pp. 3–5. Thus, the Eleventh Circuit affirmed Carr's convictions and sentence. Id. at ECF p. 5.

Carr did not petition the Supreme Court for certiorari review. These § 2255 proceedings timely followed.

## II. Discussion

Under Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255

permits collateral relief on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C § 2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184–86 (1979); Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) ("[A] district court lacks the authority to review the alleged error unless the claimed error constitute[s] a fundamental defect which inherently results in a complete miscarriage of justice." (internal quotation marks omitted)). A petitioner's claim that he received ineffective assistance of counsel in violation of the Sixth Amendment is properly brought in a collateral proceeding under § 2255. Massaro v. United States, 538 U.S. 500, 504 (2003).

To establish ineffective assistance of counsel, a § 2255 movant must establish both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that counsel's deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). In determining whether counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036

(11th Cir. 1994) (citing <u>Strickland</u>, 466 U.S. at 688). The petitioner must show, given all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." <u>Scott v. United States</u>, 890 F.3d 1239, 1258 (11th Cir. 2018) (internal quotation marks and citation omitted). In other words, "[t]he standard for effective assistance of counsel is reasonableness, not perfection." <u>Brewster v. Hetzel</u>, 913 F.3d 1042, 1056 (11th Cir. 2019) (citing <u>Strickland</u>, 466 U.S. at 687). To show that counsel's deficient performance prejudiced the defense, the petitioner must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 694. In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. <u>Id.</u> at 695. Because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Id.</u> at 697.

A § 2255 movant "bears the burden to prove the claims in his § 2255 motion." <u>Rivers v. United States</u>, 777 F.3d 1306, 1316 (11th Cir. 2015); <u>see also</u> <u>Beeman v. United States</u>, 871 F.3d 1215, 1221–23 (11th Cir. 2017). If "'the evidence does not clearly explain what happened … the party with the burden loses.'" <u>Beeman</u>, 871 F.3d at 1225 (citation omitted). A § 2255 movant is not entitled to a hearing, much less relief, "when his claims are merely conclusory

11

allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted).

### A. Ground One: Alleged misadvice during plea negotiations

Carr alleges that trial counsel gave ineffective assistance because his "improper advice on the law resulted in a greater than necessary sentence." § 2255 Motion at 4; <u>see also</u> Memorandum (Civ. Doc. 1-1) at 1–2. Carr asserts that during plea negotiations, his counsel informed him that "knowledge of age" was an element of the crime, and "thus Mr. Carr could go to trial and maybe win." Memorandum at 1. Because Carr met M.D. and S.P. at a strip club and thought they were adults, he says he relied on counsel's advice that knowledge of age was an element of the crime and decided to go to trial. <u>See</u> <u>id.</u> But mistake-of-age was not a defense to the charges, so "[t]he jury was not instructed on the required scienter." <u>Id.</u> Carr adds that during deliberations, the jury sent a note asking whether it mattered if Carr thought the victims were over age eighteen. <u>Id.</u> The Court responded that the facts the government had to prove were contained in the jury instructions. <u>See</u> Trial Tr. Vol. II at 112.

Carr alleges that had he known ignorance of the victim's age was immaterial and that the jury could not consider a mistake-of-age defense, "he would have pleaded guilty and sought a plea bargain (but appealed the statute's validity)." Memorandum at 1. He contends that he "would have had a favorable

plea bargain" given the yearslong "delay in [bringing] the indictment," which he thinks "indicate[d] weakness in the government's case." Id. Carr asserts that had counsel correctly advised him, "there would have been a bargain" and his guidelines range would have been 72 to 108 months in prison. Id. at 2.[6]

The government responds that Carr knew that mistake-of-age was not a defense to the charges because he was sitting at the table during the detention hearing when his lawyer acknowledged that mistake-of-age was not an affirmative defense. Response at 10–12. The government also argues that Carr was not prejudiced because he was ultimately sentenced to the mandatory minimum and he fails to show that the government would have offered him a plea deal that would have allowed him to obtain a lesser sentence. See id. at 13.

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162 (2012). So, "[d]uring plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" Id. (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). Strickland's two-part framework "applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474

---

[6]    The record reflects that, at some point after the search warrant was executed but before indictment, Carr received a "target letter" informing him he was the target of an investigation. Trial Tr. Vol. II at 14. Counsel was appointed to represent Carr after he received the target letter. Id. The government offered Carr a plea agreement to resolve the case short of indictment, but "[a]fter some time," Carr rejected the offer "with advice of counsel." Id. at 14–15. The record is silent about the terms of the pre-indictment offer or why Carr rejected it.

U.S. 52, 57 (1985). "The performance prong of <u>Strickland</u> requires a defendant to show that counsel's representation fell below an objective standard of reasonableness." <u>Lafler</u>, 566 U.S. at 163 (internal quotation marks and citation omitted). "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." <u>Id.</u> (citing <u>Missouri v. Frye</u>, 566 U.S. 134, 148, 132 S. Ct. 1399, 1410 (2012)).

As for counsel's performance, the record casts doubt on Carr's allegation that counsel advised him that knowledge of the minor's age was an element of the crime. At the detention hearing, Carr's lawyer acknowledged—in Carr's presence—that mistake-of-age was not a defense to the charges. <u>See</u> Detention Findings (Crim. Doc. 19-1) at 2. Although counsel argued that Carr's ignorance or mistake about the victims' ages signified a lack of dangerousness for purposes of pretrial release, he acknowledged the state of the law as it related to the mistake-of-age defense. <u>Id.</u> Later, in response to the government's Motion in Limine, counsel argued that it would violate Carr's rights under the First, Fifth, and Sixth Amendments to the United States Constitution to prevent him from asserting a mistake-of-age defense. <u>See</u> Response to Motion in Limine at 2–10. But again, Carr's lawyer acknowledged that circuit precedent foreclosed this argument. <u>Id.</u> at 1–2. And there were additional discussions at trial and sentencing about Carr's ignorance of the victims' ages, but Carr expressed no surprise that his ignorance was not a defense. <u>See</u> Minute Entry (Crim. Doc.

14

60) (granting government's Motion in Limine); Trial Tr. Vol. II at 58–60, 110–12; Sentencing Tr. at 22–32, 43–44. Given this record, counsel likely did not advise Carr during plea negotiations that knowledge of the victim's age was an element of the crime, which would have contradicted counsel's positions in open court. But because the record does not conclusively establish what counsel told Carr during plea negotiations, the Court assumes that counsel misadvised Carr in this regard during plea discussions.

Even so, Carr fails to establish prejudice under Strickland and Lafler. "[H]ere the ineffective advice led not to an offer's acceptance but to its rejection. Having to stand trial, not choosing to waive it, is the prejudice alleged." Lafler, 566 U.S. at 163–64. To show prejudice in this context,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that [1] the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [2] that the court would have accepted its terms, and [3] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Id. at 164 (bracketed numbers added).

Carr's allegations are too vague and conclusory to support a finding of prejudice under Lafler. See Tejada, 941 F.2d at 1559 (recognizing that a petitioner is not entitled to habeas relief "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." (internal quotation marks and citations omitted)). Carr

does not allege that the government actually extended a plea offer he would have accepted but for counsel's misadvice. <u>See</u> § 2255 Motion at 4; Memorandum at 1–2. He does not detail the terms of an actual plea offer or say when the government offered it. Instead, Carr speculates that, had his counsel properly advised him about the law, he could have obtained a plea deal in which Carr (1) entered some sort of guilty plea, (2) appealed the constitutionality of the statute (18 U.S.C. § 2251(a)), and (3) was given a guidelines range of 72 to 108 months' imprisonment. Memorandum at 1–2. But Carr points to nothing in the record supporting a conclusion that the government would have offered such an arrangement.

The government also denies that it would have offered a plea deal like the one Carr describes. <u>See</u> Response at 13. Indeed, the terms of Carr's theoretical plea bargain are impossible or internally inconsistent. To appeal the constitutionality of § 2251(a) (as he claims he would have under his hypothetical plea deal), Carr would have had to plead guilty to at least one count of producing child pornography. But Carr could not have pleaded guilty to producing child pornography and been sentenced to 72 to 108 months' imprisonment, since the offense carries a 15-year mandatory minimum penalty. <u>See</u> 18 U.S.C. § 2251(e).[7] Had Carr pleaded guilty to the production of child pornography, he still would

---

[7]    Carr neither alleges nor points to any evidence that he would have qualified for a sentence below the mandatory minimum under 18 U.S.C. § 3553(e) or U.S.S.G. § 5K1.1.

have been subject to § 2251(e)'s 15-year mandatory minimum sentence, which is exactly the sentence he received.

To put it in terms of Lafler's framework, Carr fails to satisfy Lafler's first and third prejudice criteria. See Lafler, 566 U.S. at 164.[8] First, he fails to show "a reasonable probability that the plea offer [he describes] would have been presented to the court," Lafler, 566 U.S. at 164, because the government denies that it would have agreed to a plea offer in which Carr was sentenced to less than the mandatory minimum for violating § 2251(a). Second, Carr fails to show a reasonable probability "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Id. Under Carr's hypothetical plea bargain, he would have had to plead guilty to the same charge(s) he was convicted of at trial, so he still would have been subject to the same 15-year mandatory minimum penalty. Since Carr is already serving the mandatory minimum, he could not have obtained a lesser sentence by pleading guilty. Because Carr fails to establish prejudice under Lafler, relief on this ground will be denied.

**B. Ground Two: The constitutionality of 18 U.S.C. § 2251(a)**

Carr claims that the statute of conviction, 18 U.S.C. § 2251(a), "is unconstitutional both facially and as applied." § 2255 Motion at 5; see also

---

[8]      The government concedes "it is likely that the Court would have accepted a plea agreement in this particular case." Response at 13.

Memorandum at 3. He argues that "[t]he statute does not put citizens on notice that unknowingly photographing a nude minor who appears to be an adult is a crime." Memorandum at 3. He seems to argue that the statute is unconstitutional because it does not allow for a mistake-of-age defense, thereby "punish[ing] an innocent mind." Id. Carr also seems to argue that the statute is unconstitutional because it "draws an arbitrary line that is not rationally related to any legitimate penalogical [sic] goal," such as by "permit[ting] performers to pose in the nude and in sexually suggestive manners, but … not allow[ing] for a person to privately take photographs of them." Id.

To the extent Carr argues that § 2251(a) is unconstitutional (facially or as applied) because it does not require proof that the defendant knew of the victim's age, he is not entitled to relief because that issue was litigated on direct appeal. "It is long settled that a prisoner is procedurally barred from raising arguments in a motion to vacate his sentence … that he already raised and that [the appeals court] rejected in his direct appeal." Stoufflet v. United States, 757 F.3d 1236, 1239 (11th Cir. 2014) (collecting cases); see also United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000). "At least where there has been no intervening change in controlling law, a claim or issue that was decided against a defendant on direct appeal may not be the basis for relief in a § 2255 proceeding." Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012).

On direct appeal, Carr argued "that the statute is unconstitutional because it does not include knowledge of the victim's age as an element of the offense and does not permit him to present ignorance of the victim's age as a defense." USCA Opinion at ECF p. 2. The Eleventh Circuit summarily rejected that argument, finding it foreclosed by Ruggiero, 791 F.3d at 1284–91. USCA Opinion at ECF pp. 3–5. Carr fails to point to any "intervening change in controlling law" that would allow him to re-litigate the constitutionality of § 2251(a) based on the unavailability of a mistake-of-age defense. Rozier, 701 F.3d at 684. Because the matter was litigated and resolved against him on direct appeal, Carr may not relitigate the issue through a motion to vacate sentence. Stoufflet, 757 F.3d at 1239; Nyhuis, 211 F.3d at 1343.

To the extent Carr argues that the statute is unconstitutional (facially or as applied) for other reasons, such a claim is procedurally defaulted because it could have been raised on direct appeal and Carr did not do so. "Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted). "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal," including constitutional claims, "or else the defendant is barred from presenting that claim in a § 2255 proceeding." Id. at 1234 (citations omitted). "A defendant can avoid a

procedural bar only by establishing one of two exceptions to the procedural default rule." Id. The first is the cause-and-prejudice exception, under which "a § 2255 movant can avoid application of the procedural default bar by 'show[ing] cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error.'" McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011) (quoting Lynn, 365 F.3d at 1234). The other exception is actual innocence, under which "a movant's procedural default is excused if he can show that he is actually innocent either of the crime of conviction or, in the capital sentencing context, of the sentence itself." Id. Carr does not allege that he can satisfy either exception to the procedural default rule. § 2255 Motion at 5–6; Memorandum at 3. As a result, he is not entitled to relief on his claims in Ground Two.

## C. Ground Three: Not enforcing subpoenas for M.D. and S.P.

Next, Carr alleges that trial counsel gave ineffective assistance because he "not only misunderstood the controlling [law], but also failed to adequately prepare for the strategy selected, thereby ensuring a guilty verdict." § 2255 Motion at 6; see also Memorandum at 4. Specifically, he states that counsel "issued subpoenas for various witnesses who would have established the purported victims represented that they were adults and that they appeared to be adults." Memorandum at 4. But, he alleges, counsel failed to ensure the subpoenas had been served and "when the witnesses did not appear, counsel did not engage the standard array of procedures: seeking a continuance or a

new trial in order to compel the testimony, introducing a prior proffer, seeking to have the court enforce the witness' appearance, and the like." Id. "Counsel simply went ahead with the trial, despite the lack of any case," Carr asserts. Id. Then, Carr complains that "counsel inexplicably showed a recording in which [S.P.] ([whom] the government failed to produce a[s] a witness) conceded she was a minor," although she "appeared and acted as an adult." Id. Carr alleges that "[a]bsent counsel's concession, the jury would have acquitted Mr. Carr." Id.

The Court divides this claim into two parts. First is the claim that trial counsel failed to enforce subpoenas for M.D. and S.P. and pressed ahead with the trial after they failed to appear. Second is the claim that trial counsel performed unreasonably by playing an extended video clip of S.P., in which S.P. allegedly conceded she was a minor. Because the second part overlaps with Ground Four, it will be addressed with that ground.

### 1. Counsel's failure to enforce subpoenas for M.D. and S.P.

Before trial, Carr's attorney issued subpoenas to M.D. and S.P. (who were adults by the time of the trial) to testify. See Trial Tr. Vol. II at 48. Neither woman appeared when Carr's attorney called them to the witness stand. See id. The government did not call M.D. or S.P. to testify either.

Carr alleges that counsel failed to ensure proper service of the subpoenas and that when M.D. and S.P. did not comply, counsel should have sought to continue the trial so he could bring them in to testify. Carr believes that had

M.D. and S.P. testified, their testimony "would have established [that M.D. and S.P.] represented that they were adults and that they appeared to be adults." Memorandum at 4.

These allegations do not support a finding of ineffective assistance. "The mere fact that other witnesses might have been available ... is not a sufficient ground to prove ineffectiveness of counsel." Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (citation omitted). "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).[9] Even if counsel's failure to call a witness "appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." Dingle v. Sec'y, Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) (quotation marks omitted). Additionally, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th

---

[9]     Decisions issued by the former Fifth Circuit Court of Appeals on or before September 30, 1981 are binding in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981).

Cir. 1991); see also Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is insufficient to carry the burden of a habeas corpus petitioner." (internal quotation marks and citation omitted)).

Carr's allegation that counsel should have enforced the subpoenas for M.D. and S.P. because they would have offered favorable testimony is speculative. Carr offers nothing to support his belief that their testimony would have been more helpful than harmful. Moreover, Carr alleges that M.D. and S.P. would have testified that they misrepresented their ages and appeared to be adults, but such testimony would have been inadmissible anyway. The Eleventh Circuit has held that knowledge of the minor's age is not an element of the crime of producing child pornography and that the Constitution does not entitle a defendant charged with that crime to present a mistake-of-age defense. Ruggiero, 791 F.3d at 1284–91; Deverso, 518 F.3d at 1258. Indeed, the Court ruled before trial that Carr could not raise a mistake-of-age defense based on circuit precedent. Minute Entry (Crim. Doc. 60). Thus, even if M.D. and S.P. would have testified that they misrepresented their ages and that they appeared to be adults, Carr was not prejudiced because such testimony would have been irrelevant and inadmissible.

Moreover, Carr's attorney had apparent strategic reasons not to enforce the subpoenas. For one, "[c]ompetence does not require an attorney to browbeat

… reluctant witness[es] into testifying, especially when the facts suggest that no amount of persuasion would have succeeded." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 125 (2009). Here, there is no sign that M.D. or S.P. would have willingly testified favorably on Carr's behalf. For another, M.D.'s and S.P.'s failure to respond to the subpoenas played into the defense's hands. Counsel pointed out in closing argument that M.D. and S.P. failed to respond to the subpoenas, Trial Tr. Vol. II at 79, and asserted that "they obviously don't care about this [case]," <u>id.</u> at 80. Counsel used that to bolster his argument that Carr did not pressure, coerce, or threaten the girls to create sexually explicit images because they were willing participants who did so to make money. <u>See</u> <u>id.</u> at 80–82. Carr's attorney also seized on the absence of M.D.'s and S.P.'s testimony—citing the government's failure to call them—to cast doubt on whether the government had proven (a) the victims' identities or (b) whether Carr used, persuaded, induced, enticed, or coerced them to engage in sexually explicit conduct for the purpose of creating images of such conduct. <u>Id.</u> at 78–79, 80–81, 85–86. Counsel's decision to go forward without enforcing the subpoenas for M.D. and S.P. was "the epitome of a strategic decision," <u>Waters</u>, 46 F.3d at 1512, and Carr's allegations do not show that the decision "was so patently unreasonable that no competent attorney would have chosen it," <u>Dingle,</u> 480 F.3d at 1099.

As far as Carr generally alleges that defense counsel "misunderstood the controlling [law]" and "failed to adequately prepare for the strategy selected," § 2255 Motion at 6, the record also refutes these claims. The record shows that defense counsel understood that mistake-of-age was not an available defense to the charges because he recognized as much at the detention hearing and in response to the government's Motion in Limine. Detention Findings at 2; Response to Mtn. in Limine at 1–2. Defense counsel prepared a trial strategy that did not depend on a mistake-of-age defense. First, the defense focused on showing that Carr did not "employ[ ], use[ ], persuade[ ], induce[ ], entice[ ], or coerce[ ]" M.D. and S.P. 18 U.S.C. § 2251(a). Defense counsel argued that Carr did not use threats, violence, or intimidation and that the victims were willing participants. Trial Tr. Vol. I at 73–75; Trial Tr. Vol. II at 80–82. Second, defense counsel suggested that the government had not proven the victims' identities beyond a reasonable doubt (and hence, had not proven that minors were involved). See Trial Tr. Vol. I at 66–68; Trial Tr. Vol. II at 80–81. Third, defense counsel suggested that when Carr hired or paid money to M.D. and S.P., it was not "for the purpose of producing any visual depiction of [sexually explicit] conduct." 18 U.S.C. § 2251(a). Instead, counsel implied that Carr's purpose was only to do a photo shoot of M.D. and S.P., and the fact that the photo shoots turned sexually explicit did not prove that such was Carr's original purpose. See Trial Tr. Vol. I at 73; Trial Tr. Vol. II at 84. And fourth, the defense

challenged aspects of the investigation, such as Special Agent Deutsch's thoroughness and promptness in documenting his interview with Carr. See Trial Tr. Vol. I at 68–71; Trial Tr. Vol. II at 10–14, 51–52. Carr's attorney laid the foundation for these arguments by, for example, eliciting testimony that there was no evidence Carr had used threats, violence, or intimidation with M.D. or S.P., Trial Tr. Vol. I at 73–75, and that there was no DNA confirmation of M.D.'s and S.P.'s identities, even though four other people were using S.P.'s Social Security Number and date of birth, id. at 66–68. The jury was free to reject the defense's theories and it did. But the Court cannot say that "no competent counsel" would have chosen these lines of defense, Khan v. United States, 928 F.3d 1264, 1272 (11th Cir. 2019) (citing Chandler v. United States, 218 F.3d 1305, 1314–15 (11th Cir. 2000) (en banc)), and the record reflects that Carr's attorney was well prepared to pursue them. Because Carr's allegations, together with the record, fail to show that his attorney's performance was deficient or prejudicial under Strickland, relief on this claim will be denied.

## 2. Playing the extended video of S.P.

Carr also alleges that his attorney gave ineffective assistance by playing an extended video clip showing Carr having sex with S.P. Memorandum at 4. Because this allegation overlaps with the claims in Ground Four, it will be addressed along with that ground.

**D. Grounds Three and Four: Playing the extended video of S.P.**

At trial, the government put into evidence two videos that Carr recorded of S.P., one being around thirty-two minutes long and the other being less than four minutes long. See Trial Tr. Vol. I at 140, 142; Gov't Exs. 66, 67. The government played only four excerpts (totaling about three to four minutes), which showed S.P. having sex with Carr. See Trial Tr. Vol. I at 143–44, 153–57. Defense counsel played an extended version of the same videos during the defense's case in chief. See Trial Tr. Vol. II at 18. Carr alleges that S.P. said she was a minor in one of the videos (which is unclear from the transcript, but the Court takes Carr's word for it). Memorandum at 4. After showing the extended clips, defense counsel elicited testimony from Special Agent Deutsch that there was no evidence S.P. or M.D. had been forced to participate in their activities with Carr and that their motivations were to make money. Trial Tr. Vol. II at 19–22. Defense counsel asserted in closing argument that Carr had not coerced, threatened, or intimidated S.P. or M.D. and that they voluntarily engaged in sexually explicit activities for money. Id. at 80–82.

Carr alleges that trial counsel performed deficiently by showing the jury "a recording with the (allegedly) underage woman [S.P.] having sex with Mr. Carr." Memorandum at 5; see also § 2255 Motion at 8. He asserts that counsel's "inexplicabl[e]" decision to play the extended clip prejudiced him because S.P. conceded she was a minor and the government otherwise could not have proven

27

that she was underage. Memorandum at 4, 5.  Carr argues that because "neither [M.D. nor S.P.] was willing nor did they testify," the "government could not establish the age or identity of the purported victims." Id. at 5. According to Carr, if not for his lawyer "displaying the video and stipulating the age[10], the government could not have met its burden of proof." Id. Thus, Carr alleges that "[c]ounsel's showing the sex tape was unreasonable since the government otherwise lacked evidence that a particular photographic subject was underage." Id.[11]

The record affirmatively refutes this claim. Before defense counsel played the extended videos of S.P., the government had already introduced ample evidence (independent of the videos) establishing both victims' ages and identities. HSI Special Agent Justin Deutsch testified that he interviewed S.P. and M.D. in person and confirmed their ages through DMV records and birth certificates. Trial Tr. Vol. I at 32–42. The government introduced and published redacted copies of their birth certificates and driver's licenses, which showed

---

[10]    Defense counsel never stipulated that the females depicted in the images and videos introduced at trial were underage. Rather, defense counsel questioned whether the government had proven that the females depicted in those images were the same M.D. and S.P. whose birth certificates and DMV records were admitted into evidence. See Trial Tr. Vol. I at 66–68; Trial Tr. Vol. II at 80–81. By "stipulating the age," Carr presumably means defense counsel's decision to play the extended videos. See Memorandum at 5.

[11]    Carr also points to "the deliberating jury's note as to whether Mr. Carr's belief that the woman was over 18 constituted a defense to the crime," which he thinks proves that "without the stipulation and recording it is reasonably likely the government could neither have established who the woman was or what her age was." Id.

that S.P.'s date of birth was November 10, 1995, and M.D.'s date of birth was January 28, 1997. See id.; see also Gov't Exs. 1–4A. The driver's licenses also included photographs of S.P. and M.D. The government established that the video and images of S.P. were created on April 12, 2013, meaning she would have been seventeen years old on that date. Trial Tr. Vol. I at 130, 157. Likewise, the government established that the images of M.D. were created on October 27, 2012, meaning she would have been fifteen years old on that date. Id. at 129–30, 157–58. Special Agent Deutsch added that, having met M.D. and S.P. in person, he had "no doubt" that the individuals he interviewed were the same minors whose pictures were in Carr's residence and who were identified through DMV records and birth certificates. Id. at 37–38, 41–42, 148, 150, 157. The jury also heard testimony that, during his consensual interview, Carr identified photos of S.P. and M.D. Id. at 52–55; Gov't Exs. 30, 31. And the government showed the jury some images of S.P. and M.D. that were recovered from Carr's devices, allowing the jury to decide for themselves whether they were the same individuals whose photos and dates of births were in the DMV records. See Trial Tr. Vol. I at 150–52. Thus, there is not a reasonable probability the jury would have had a reasonable doubt about the victims' ages and identities but for counsel playing an extended video clip in which S.P. (allegedly) said she was a minor. See Strickland, 466 U.S. at 694.

Further, defense counsel could have made a reasonable strategic decision to play the full videos of S.P. Part of the defense theory was that Carr did not "employ[ ], use[ ], persuade[ ], induce[ ], entice[ ], or coerce[ ]" S.P. (or M.D.) "to engage in … sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a). Carr argued that S.P. and M.D. were willing participants who allowed Carr to photograph them (or in S.P.'s case, to have sex with her) to make money. See Trial Tr. Vol. II at 19–22, 80–82. A reasonable attorney could have decided that playing the full videos of S.P. could support that theory. As Carr himself states, the video of S.P. "shows the alleged woman and Mr. Carr having playful sex," she "is not visibly underage," and she "is far from coerced, and actually seems in control of the events. The point is it was consensual and appears to be between adults." Memorandum at 5; see also id. at 4 ("In this same video, the confessed minor appeared and acted as an adult"). That is exactly why defense counsel would have played the videos: to show that S.P. was not coerced and appeared to behave like a mature, voluntary participant. To borrow the government's description,

> Counsel's choice to publish more of the video evidence was obviously part of his trial strategy…. The longer the video played, the victim's appearance and conduct hammered home the implication that "this person does not look or act like a child!" This trial strategy is summed up in this way: the longer the jury observed the post-pubescent female victim engaging in sex, the more "adult-like," "professional," and "experienced" she appeared, the less sympathy the jury would have for her, the more empathy the jury would have for Carr, and the more normalized Carr's criminal conduct would appear.

Response at 17–18.

Plus, as recounted above, even before defense counsel played the extended videos, the government had introduced testimony, birth certificates, and DMV records establishing the ages and identities of S.P. and M.D. And the government had already played four excerpts of the videos of S.P. Given that, and considering that Carr was not presenting a mistake-of-age defense anyway, it did not hurt Carr's defense to play the extended videos, even if one of them portrayed S.P. telling Carr she was under 18 years old. Carr's defense strategy focused on other elements of the case, such as a lack of coercion. So defense counsel could have reasonably determined that the potential benefits of playing the full videos outweighed the risks. And even if that calculation were unreasonable, Carr fails to show "a reasonable probability that … the factfinder would have had a reasonable doubt respecting guilt" had counsel not played the full videos. Strickland, 466 U.S. at 695. Thus, counsel's performance was neither deficient nor prejudicial under Strickland, and relief on this claim will be denied.

### III.   Conclusion

Having reviewed each of Carr's claims and finding that none warrants relief under 28 U.S.C. § 2255, it is **ORDERED**:

1. Petitioner Thomas Leslie Carr's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

31

2. The Clerk will enter judgment for the United States and against Carr, and close the file.

3. If Carr appeals the denial of the petition, the Court denies a certificate of appealability (COA).[12] Because this Court has determined that a COA is not warranted, the Clerk will terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination will serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 25th day of October, 2022.

_____
BRIAN J. DAVIS
United States District Judge

lc 19
Copies:
Counsel of record
Petitioner

---

[12]     This Court should issue a COA only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court finds that a COA is not warranted.